# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT WAYNE HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV 10-036-JHP-SPS |
| | ) | |
| DR. SANDERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss. The court has before it for consideration plaintiff's amended complaint, the defendants' motion, plaintiff's responses, and a special report prepared at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Davis Correctional Facility (DCF) in Holdenville, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at DCF. The defendants, all DCF employees, are Dr. Sanders, Correctional Officer Beasley, Captain A. Berry, Nurse R. Larin, Correctional Officer Hayes, Lt. Branscum, and an unknown male officer.[1]

Plaintiff raises three claims in his complaint: (1) deliberate indifference to medical condition, (2) retaliation, and (3) emergency medical condition. The handwritten complaint is almost unreadable, so it is difficult to decipher and understand, but he mainly appears to

---

[1] The unknown male officer has not been named or served.

be complaining about his medical treatment at DCF in 2008.

He alleges that while he was incarcerated at the Oklahoma State Penitentiary in October 2008, he was kept in a cell with no bedding or lighting. He could not see what he was eating, but the food made his mouth burn severely, and he began sweating profusely and experiencing chest pains. The symptoms lasted for two days. When he complained to staff that something had been put in his food, he was told he was being shipped to DCF.

He arrived at DCF on October 14, 2008, and was asked in the intake area why he was sweating so heavily. He was placed in a holding cell for about two hours before being moved to the medical area. He told the nurse about his symptoms, and she consulted with another nurse before administering an EKG. He heard officers discussing security requirements for taking him to a hospital. Someone made phone calls, and the staff allegedly was told to get plaintiff to a hospital in town ASAP. The next thing he remembered was being given some pills and being moved to a room in the back of the facility hospital for a couple of hours. He fell asleep, but was awakened for another EKG and then was taken to a cell. The next day he was returned to the facility hospital for another EKG before being returned to a cell. He alleges that the entire time, his left arm and facial cheek felt numb, and his left hand was ice cold. He also experienced chest pains and an erratic heartbeat. He asserts he never had experienced such symptoms before eating the food at Oklahoma State Penitentiary.

Over the next two days his blood pressure was checked, and additional EKG tests were run. He saw Defendant Dr. Sanders about 12 days after his arrival at DCF. Dr. Sanders said he was the physician on call at the local hospital when the DCF medical staff called. Dr. Sanders told plaintiff he had advised the DCF staff to take him to the local hospital

immediately. When Dr. Sanders looked through plaintiff's medical file, he discovered the initial EKG was missing, so he made a note in the file to find the EKG.

Plaintiff alleges that since his emergency treatment at DCF, he has submitted medical requests, but has not seen a doctor. He apparently saw two nurses and was told his first EKG was all right. Dr. Sanders subsequently claimed he did not remember the conversation about the first EKG. Plaintiff had another EKG and blood was drawn June 25, 2009, but he did not receive the results.

The defendants have filed a motion to dismiss, alleging plaintiff has failed to properly exhaust the administrative remedies for his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

The procedure for exhausting administrative remedies is set forth in DOC Policy OP-090124, "Offender Grievance Process." An inmate first must attempt to resolve his

3

complaint informally within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, raising only one issue in each RTS. If the complaint still is not resolved, he then may file a grievance with the facility head or the medical director (for medical issues) within 15 calendar days of the incident, or the date of the response to the RTS, whichever is later. If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority or the Chief Medical Officer, whichever is appropriate, within 15 calendar days of receipt of the reviewing authority's response or any amended response. The administrative process is exhausted only after all of these steps have been taken.

The special report indicates plaintiff attempted to file a grievance concerning property issues with the DOC Administrative Review Authority on December 30, 2008. The grievance was returned unanswered on January 13, 2009, because it lacked a Request to Staff response and a grievance response from the facility head. He did not correct and resubmit the grievance.

On February 9, 2010, plaintiff submitted an "emergency grievance" concerning medical issues and a lawsuit against the facility doctor and other staff. The Medical Services Administrator returned the grievance unanswered on February 11, 2010, because it was not of a sensitive or emergency nature, as defined by facility policy, and plaintiff was required to follow the standard grievance process. The facility records show that plaintiff did not resubmit his grievance using the proper procedures.

Plaintiff asserts in his response to the motion that he did submit several Requests to Staff, but none were answered. He, however, has provided no evidence of these submissions. The court, therefore, finds plaintiff has failed to exhaust the administrative remedies for the

4

claims presented in his complaint.

**ACCORDINGLY,** the defendants' motion to dismiss [Docket #32] is GRANTED, and this action is, in all respects, DISMISSED WITHOUT PREJUDICE for plaintiff's failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 23rd day of March 2011.

James H. Payne
United States District Judge
Eastern District of Oklahoma